UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LAKE TRUST CREDIT UNION,

        Appellant,

v.

GREGORY GERALD HOUSTON,

        Appellee.
_____/

Civil Case No. 2:12-CV-10534-BAF-RSW
Hon. Bernard F. Friedman
Magistrate Judge R. Steven Whalen

## APPELLANT'S BRIEF

# TABLE OF CONTENTS

|  | Page |
|---|---|
| ***Basis of Appellate Jurisdiction***........................................................... | 4 |
| ***Issue on Appeal***........................................................................................ | 5 |
| ***Standard of Review***.................................................................................. | 6 |
| ***Statement of the Case***............................................................................ | 7 |
| ***Argument***.................................................................................................... | 10 |
| ***Conclusion***................................................................................................. | 16 |

## <u>Cases</u>

| | |
|---|---|
| *In re Batie,*.................................................................................................... <br> 995 B.R. 85 (6th Cir. 1993) | 6 |
| *In re New Haven Foundry, Inc.,*............................................................... <br> 285 B.R. 646 (Bankr. E.D. Mich. 2002) | 11 |
| *Citizens Bank of Maryland v. Strumpf,*.................................................. <br> 516 U.S. 16, 116 S. Ct. 286, 133 L.Ed. 2d 258 (1995) | 11, 12 |
| *In re Holder,*................................................................................................ <br> 182 B.R. 770 (Bankr. M.D. Tenn. 1995) | 11 |
| *United States v. Ron Pair Enters., Inc.,*................................................. <br> 489 U.S. 235, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989) | 12 |
| *In re Hess,*..................................................................................................... <br> 456 B.R. 309 (Bankr. E.D. Mich. 2011) | 10, 13 |
| *Conn. Nat'l Bank v. Germain,*................................................................. <br> 506 U.S. 249, 112 S. Ct. 1146, 117 L.Ed.2d 391 (1992) | 12 |
| *In re Cullen*................................................................................................... <br> 329 B.R. 52 (Bankr. N.D. Iowa 2005) | 15 |
| *In re Kleinsmith,*......................................................................................... <br> 361 B.R. 504 (Bankr. S.D. Iowa 2006) | 15 |

**_Statutes_**

| | |
|---|---|
| 28 U.S.C. §158(a) | 4 |
| 11 U.S.C. §553(a) | 5, 6, 11, 12 |
| M.C.L. §490.101 | 10 |
| M.C.L. §490.102(1) | 10 |
| M.C.L. §490.361(4) | 10 |
| M.C.L. §490.51 | 11 |
| M.C.L. §490.52 | 9 |
| M.C.L. §490.53 | 5, 6, 11, 13 |
| M.C.L. §490.64 | 5, 6, 11, 13, 14, 15 |

## BASIS OF APPELLATE JURISDICTION

The jurisdiction of a federal district court to hear appeals from orders of the Bankruptcy Court is conferred by 28 U.S.C. §158(a) which provides for district courts to hear appeals from final judgments, orders and decrees. The Order from which this appeal arises is a final order.

## ISSUE ON APPEAL

Whether the Bankruptcy Court erred when it ruled that the Credit Union's right, pursuant to 11 U.S.C. §553(a) and M.C.L. §490.64, to set-off a debt owed to it by Debtor against funds in a joint account is subject to the presumptions of ownership contained in M.C.L. 490.53?

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Batie*, 995 F.2d 85 (6th Cir. 1993). The issue presented in this appeal, the bankruptcy court's ruling that a Credit Union's right, pursuant to 11 U.S.C. §553(a) and M.C.L. §490.64, to set-off a debt owed to it by Debtor against funds in a joint account is subject to the presumptions of ownership contained in M.C.L. 490.53, is a matter of law to be reviewed *de novo*.

## STATEMENT OF THE CASE

This is an appeal from an Opinion and Order Regarding Lake Trust Credit Union's Motion for Relief From the Automatic Stay to Allow Setoff Pursuant to 11 U.S.C. §553(a). The Appellee/Debtor, Gregory Gerald Houston, filed for relief pursuant to Chapter 7 on August 2, 3011. Mr. Houston did not list his interest in a joint account held at Lake Trust Credit Union on Schedule B of his bankruptcy schedules or in answer to Statement of Financial Affairs question 14 which inquires about "Property Held for Another Person". Account #XXXXXX0238 with Lake Trust Credit Union was/is a "Multiple Name Share Deposit Account with Survivorship. (See EXHIBIT 1) The owners of the account were/are Kathryn V. Houston-Nedd, Member and Gregory G. Houston, First Joint Member. At the time the Chapter 7 bankruptcy case was filed, the above referenced joint account held a balance of $61,396.68. (See EXHIBIT 2) Additionally, under this same account, there were/are three (3), twelve (12) month Certificates of Deposit which held funds totaling $27,409.16 (#10), $27,409.16 (#11) and $27,409.16 (#12) respectively. The Certificates of Deposit were owned by Kathryn Houston-Nedd and Hubert A. Nedd, Gregory Houston and Karin Houston. (See EXHIBIT 3) Hubert A. Nedd, Gregory Houston and Karin Houston were listed on the Certificates as "Joint Owner". Mr. Houston listed obligations owing to Appellant, Lake Trust Credit Union, on Schedule F of his bankruptcy documents. He scheduled a debt in the amount of $40,000.00 relating to account #XXXX-XXXX-XXXX-4914 and a second debt in the amount of $1,574.00 relating to account #XXXX-XXXX-XXXX-3730. Both of these accounts were VISA accounts with Lake Trust Credit Union.

Kathryn Houston-Nedd created account #XXXXXX0238 on or about June 24, 1993. (See EXHIBIT 4) This account, as stated above, has two (2) owners, Kathryn Houston-Nedd and Gregory G. Houston. Mr. Houston created an account with Lake Trust Credit Union solely in his own name on or about November 29, 1999. (See EXHIBIT 5) Both Ms. Houston-Nedd and Mr. Houston were provided

with "Terms and Conditions of Your Account" when they opened their accounts. (See EXHIBIT 6) Mr. Houston opened a VISA Classic Credit Card with Lake Trust Credit Union solely in his name on or about November 19, 2000. (See EXHIBIT 7) Lake Trust Credit Union issued to Mr. Houston a VISA card (#3730) with a credit limit of $1,500.00 and provided him with Credit Card Account Opening Disclosures and Consumer Credit Card Agreement. (See EXHIBIT 8) Mr. Houston opened a Platinum Preferred VISA with Lake Trust Credit Union on or about September 22, 2005. (See EXHIBIT 9) Lake Trust Credit Union issued to Mr. Houston a VISA card (#4914) with a credit limit of $50,000.00 and provided him with Credit Card Account Opening Disclosures and Consumer Credit Card Agreement. (See EXHIBIT 10) The balance owing on these accounts on the date of the Chapter 7 filing was $1,499.14 (See EXHIBIT 11) and $40,488.53 (See EXHIBIT 12) respectively.

Upon Mr. Houston's Chapter 7 filing, Lake Trust Credit Union froze funds in account #XXXXXX0238 in an amount equal to the balance owing on the two (2) VISA accounts and filed a Motion for Relief From the Automatic Stay to Allow Setoff Pursuant to 11 U.S.C. §553(a). (Bankruptcy Court Docket #22) Mr. Houston filed a Response to the Motion (Bankruptcy Court Docket #25) and a hearing was scheduled for October 4, 2011. At the hearing, the Court requested briefs and the hearing was adjourned to November 8, 2011. Briefs were filed by both parties. (Bankruptcy Court Docket #34 and #35) At the November 8, 2011 hearing, the Court was still undecided and adjourned the hearing again to November 29, 2011. The Court filed an Amended Notice of Hearing that changed the adjourned date to December 6, 2011. That hearing was again adjourned by the Court, without the appearance of either party, to December 13, 2011. The hearing on December 13, 2011 was not held as the Bankruptcy Judge indicated she would issue an opinion based upon the briefs submitted.

The Court filed an Opinion and Order Regarding Lake Trust Credit Union's Motion for Relief From the Automatic Stay to Allow Setoff Pursuant to 11 U.S.C. §553(a) on December 21, 2011. The

court held that the Credit Union's right to setoff is subject to Ms. Houston-Nedd's claim of contribution and the presumption of ownership as provided in Mich. Comp. Laws §490.53 (see page 19 bankruptcy court's Opinion). The result of this, according to the bankruptcy court, is that the Appellant's may not setoff against the funds in joint account #XXXXXX0238. It is from this ruling that Lake Trust Credit Union has appealed.

## ARGUMENT

[A] "Domestic credit union" means a cooperative, nonprofit entity organized under this act for the purposes of encouraging thrift among its members, providing a variety of financial services to its members, and providing an opportunity for its members to use and control their own money on a democratic basis in order to improve their economic and social condition." M.C.L. §490.102(l)

Credit unions are non-profit financial cooperatives owned by their members and governed by a board of directors elected by, and from among, those members. Usually there is a common bond among the members, such as belonging to the same organization, working for the same company or living in the same geographical area. Credit unions accept deposits from their members and use them to make short-term loans. Deposits are regarded as purchases of shares, and all earnings of the credit union are paid out as dividends to members. Credit unions offer basic banking services (checking and savings accounts, consumer loans, etc.) with larger credit unions offering a larger range of services (credit cards, mortgages, etc.).

Credit union activities in Michigan are governed by the Michigan Credit Union Act M.C.L. §490.101 *et.sec.* The Credit Union Act provides for a lien on shares deposited.

(4) Except as provided in this subsection or where prohibited by applicable state or federal law or otherwise agreed by contract, a domestic credit union has a lien on any share of a member, or any deposit account from which a member may withdraw for his or her own benefit without the consent of another person, for any obligation owed to the domestic credit union by that member or for any loan cosigned or guaranteed by that member. M.C.L. §490.361(4)

Mich. Comp. Laws § 490.361(4) provides a credit union with a lien under two scenarios, both of which apply when a member is indebted to the credit union. In these situations, M.C.L. § 490.361(4) provides a credit union with a lien (a) "on any share of a member" or (b) "any deposit account from which a member may withdraw for his or her own benefit without consent of the another person." *In re Hess,* 456 B.R. 309.

Credit union accounts owned by more than one party are addressed in M.C.L.§490.51 through M.C.L. §490.65 which is entitled "Credit Union Multiple-Party Accounts". Specifically, set-off of a Multiple-Party Account is provided for at M.C.L. §490.64 which states:

> Without qualifying any other statutory right to set-off or lien and subject to any contractual provision, when a party to a multiple-party account is indebted to a credit union, *the credit union has the right to set-off against the entire amount of the account.* [Emphasis added]

"Section 553 of the Bankruptcy Code preserves the right to set off as a widely recognized common law right that "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, at page 18, (1995). 11 U.S.C. §553 provides, in pertinent part:

> Except as otherwise provided in this section and in sections 362 and 362 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of this case[.]

"State law governs the substance of a set off claim under § 553." *In re New Haven Foundry, Inc.,* 285 B.R. 646, at page 648 (Bankr. E.D. Mich. 2002). The right to set off is preserved where (1) there are mutual, pre-petition obligations owing between the debtor and the creditor and (2) a right to setoff the obligations exists under non-bankruptcy law. *In re Holder,* 182 B.R. 770, at page 775 (Bankr. M.D. Tenn. 1995).

The issue in this particular case is the interpretation of M.C.L. §490.64 and whether the plain language stating "the credit union has a tight to set-off against the entire amount of the account" is subject to the presumption provisions of M.C.L. §490.53. M.C.L. §490.53 which states:

> During the lifetime of all parties, a multiple-party account which provides that sums on deposit or in shares may be paid on the demand of either of 2 or more parties is presumed to belong to the parties in the proportion of the net contributions by each to the sums on deposit.

It is appellant's position that set-off pursuant to §490.64 is not subject to the provisions of §490.53.

The starting point for interpreting any statute is its plain language, and where the statutory language "is plain, 'the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 37 S. Ct. 192, 194, 61 L. Ed. 442 (1917)). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Ron Pair Enters., Inc.,* 109 S. Ct. at page 1030. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 101 S. Ct. 698, 701, 66 L. Ed. 2d 633 (1981)).

Appellant argues that a multiple-party account between the Appellee/Debtor, his mother was established under the Application. As a result, the Creditor asserts that M.C.L. § 490.64 provides it with a right to set-off the entire amount of the account because the Appellee/Debtor, as a party to a multiple-party account, is indebted to the Creditor on a VISA credit card account. Appellant also relies on M.C.L. 490.361, 11 U.S.C. §553(a) and *In re Strumpf,* 516 U.S. 16 (1995) which provides that the court may lift the automatic stay to allow for set off of funds. Pursuant to 11 U.S.C. §553,

> ...this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

Appellee/Debtor argued to the Bankruptcy Court that Appellant may not set off the amount frozen in the joint account against the amounts owing on the VISA debt because he has not deposited any monies into or withdrawn any monies from the multiple-party account. This issue has been in front of the Bankruptcy Court for the Eastern District of Michigan on numerous occasions.

This issue was argued before Judge Walter Shapero in the case *In re: Pamela Crawford,* Case No.

09-58228. (Opinion is attached hereto as EXHIBIT 13) In that case, Debtor was joint on two accounts with her sons. Debtor argued that each account belonged to her sons and that her sons were the only ones to deposit or withdraw any money from the accounts. Judge Shapero concluded that "the clear language of M.C.L. §490.64 precludes it from engaging in a factual inquiry as to whose monies went into the accounts in question..."(Pages 5-6 of Opinion.) Although this opinion is not published, it provides a reasoned analysis of the statutes in question here. Additionally, Judge Shapero, in a published opinion, *In re Hess*, 456 B.R. 309 (E.D. Mich. 2011) expanded on the *Crawford* analysis. The credit union in the *Hess* case claimed an right to set off against several accounts held by the debtor, his mother and his sister. The Court conducted a thorough analysis of the creation of the multiple-party account and determined that as some of the accounts were not actually "multiple-party accounts" within the meaning of the statute and therefore not subject to set-off and held:

> In light of the Court's determination that the only multiple-party account established under the Application was limited to the Debtor's mother's checking account, it is not necessary for the Court to address the Debtor's second argument about the presumptions that exist under M.C.L. §490.52 to §490.58.

The Court in *Hess* lifted the automatic stay "only to the multiple party account established under the Application" without consideration of presumptions of ownership.

The Appellee/Debtor Houston made arguments similar to those presented in the *Crawford* and *Hess* cases and the Court took an active role in attempting to find a way to avoid the set-off of the account. The Judge admitted that "...I know there's no case law out there...". (Transcript, November 8, 2011, Pg.8, Line 17). There is some case law, as cited above, but no appellate opinions.

The bankruptcy Court, in its opinion, held that the Appellant had a lien against the multiple-party account in question. "... this Court finds that the Credit Union has a lien against the Survivorship Account..." (Opinion pg.7) The Court continued by indicating that it disagreed with the holdings in the *Crawford* and *Hess* cases because the:

> Credit Union's lien remedy is found in a subsection of a statute entitled "Composition of capital". The clear purpose of giving a credit union a lien right is to protect the capital of the credit union and to prevent a credit union member from withdrawing funds when a member has an obligation to the credit union. The question of what law governs when a credit union seeks to set-off an obligation owed by a member against funds in a multiple-party account is not answered by Mich. Comp. Laws §490.361. To determine the respective rights of th parties of a multiple-party account and a credit union, the Court must rely on the statutes governing multiple-party accounts, *those being Mich. Comp. Laws §§490.53-490.57 [Emphasis added]*

The court, in citing the controlling Michigan Law, has failed to include the one, unambiguous section that is the beginning and the ending of the analysis. M.C.L. §490.64 is a part of the "Credit Union Multiple-Party Accounts" statute. It states specifically and without ambiguity that "when a party to a multiple-party account is indebted to a credit union, the credit union has the right to set-off against the entire amount of the account." The Court attempts to muddy the waters by citing not only to other sections of the multiple-party account statute that do not apply to set-off but, also to state statutes controlling accounts held at banking institutions which, by statutory definition, are not one in the same. The Court further reasoned that because the Appellee/Debtor was not a member at the time the account in question was established (in 1993), he has no membership interest or shares in that account at that time. The terms and conditions of account, provided to the multiple parties to the account created in 1993 states:

> You agree that we may...charge against and deduct from this account any due and payable debt owed to us now *or in the future*, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. *[Emphasis added]*

The Appellee/Debtor became a member of the Appellant Credit Union in 1999. He opened two (2) VISA credit card accounts; one in 2000 and the second in 2005. The credit card agreement between the Appellant and Appellee/Debtor provides "[y]our account is secured by all other shares you have in any individual or joint account with the credit union...." (See page 4 of EXHIBIT 8) The shares in the multiple-party account are "shares you have in any individual or joint account with the credit union."

Throughout the opinion, the Court makes conclusions that are unsupported by Michigan law or an extension of other authority. Specifically, the Court cites to two (2) cases from the Iowa bankruptcy courts, *In re Cullen,* 329 B.R. 52 (Bankr.N.D. Iowa 2005) and *In re Kleinsmith,* 361 B.R. 504 (Bankr. S.D. Iowa 2006). While both cases involve credit unions and set-off, set-off in Iowa is based in Iowa common law, not statute. This is because the Iowa Code was amended in 2004 to remove the language granting credit unions a lien on shares and deposits of its members. *In re Kleinsmith, supra.* at 507. The holding in both cases is rooted in Iowa common law that provides joint tenants each with a right to all of the funds in an account. Each joint owners precise share of the undivided interest may be determined and the presumption of equal shares is rebuttable. *Cullen, supra.* at page 57 citing *Anderson v. Iowa Dep't of Human Servs.,* 368 N.W.2d 104, 109 (Iowa 1985), *In re Estate of Thomann,* 649 N.W.2d 1, 6 (Iowa 2002) and *In re Kondora,* 194 B.R. 202, 209 (Bankr. N.D. Iowa 1996). Michigan has M.C.L. 490.64 which specifically provides "when a party to a multiple-party account is indebted to a credit union, the credit union has the right to set-off against the entire amount of the account." The law does not get more clear and unequivocal than this.

## CONCLUSION

The Bankruptcy Court erred when it ruled that the Credit Union's right, pursuant to 11 U.S.C. §553(a) and M.C.L. §490.64, to set-off a debt owed to it by Debtor against funds in a joint account is subject to the presumptions of ownership contained in M.C.L. 490.53. The Appellant may set-off against the entire amount of the multiple-party account held by Appellee and his mother. The Appellee/Debtor was indebted to the Appellant at the time the bankruptcy case was filed and was an owner of a multiple-party account with funds on deposit in an amount to satisfy the indebtedness. As such, the Order of the bankruptcy court must be reversed.

February 22, 2012                                BUTLER, BUTLER & ROWSE-OBERLE, P.L.L.C.

*/s/Karen L. Rowse-Oberle*
KAREN L. ROWSE-OBERLE   (P41893)
24525 Harper Avenue
St. Clair Shores, MI 48080
(586) 777-0770
krowse-oberle@butler-butler.com